# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEE J. DRUMMER, :<br>               Plaintiff, :<br>               :<br>v. :<br>               :<br>TRUSTEES OF THE UNIVERSITY OF :<br>PENNSYLVANIA *t/d/b/a* HOSPITAL :<br>OF THE UNIVERSITY OF :<br>PENNSYLVANIA, :<br>             Defendant. : | CIVIL ACTION NO. 16-2982 |

## MEMORANDUM OPINION

Rufe, J.                                                                                                                   December 11, 2017

Plaintiff, Lee J. Drummer, brought this suit against his former employer, Defendant Hospital of the University of Pennsylvania, alleging age, sex, race, and disability discrimination and retaliation, and violation of the Family and Medical Leave Act ("FMLA"). Defendant has moved to dismiss his Amended Complaint on the grounds that certain claims are time barred and all claims are insufficiently alleged. For the reasons discussed below, Defendant's motion will be granted in part and denied in part, and Plaintiff will be granted leave to file a second amended complaint.

## I.     BACKGROUND

The following facts alleged in the Amended Complaint are assumed to be true, unless otherwise stated, for purposes of the Motion to Dismiss.

Plaintiff is a 56-year-old African-American man who was employed by Defendant in 2014 and 2015, when the alleged events at issue took place.[1] He alleges that he is disabled and has a family member who is also disabled. While the Amended Complaint does not clearly

---

[1] Am. Compl. ¶¶ 20-21.

identify Plaintiff's position, it appears, based on his allegations concerning "other secretaries," that Plaintiff was working as a secretary.[2] Several years before the events giving rise to this case, Plaintiff had filed an Equal Employment Opportunity Commission discrimination complaint against Defendant after being terminated, and was subsequently reinstated.[3]

In June of 2014, Plaintiff learned that two other secretaries, who were both African-American women, were paid approximately $1.40 more per hour than he was.[4] He further believes that "other non-African-American secretaries" were paid more than he was, including a particular "lighter skinned individual" named Michael.[5] When he learned of the alleged pay disparities, he spoke with his supervising nurse managers.[6] Around that time, he was placed on a performance improvement plan ("PIP") that lasted from June 2014 until March 2015.[7]

Plaintiff believed the PIP was a "general form of harassment," and he said so to Defendant's human resources department sometime in March 2015.[8] The human resources personnel responded by suggesting that Plaintiff take a leave of absence "due to personal issues he was having at home."[9] After hearing the suggestion, Plaintiff sought help from Defendant's Employee Assistance Program as well as from his physician, who prescribed him an antidepressant.[10]

---

[2] *Id*. at ¶ 27.

[3] *Id*. at ¶ 24.

[4] *Id*. at ¶ 25.

[5] *Id*. at ¶ 27-28.

[6] *Id*. at ¶ 29.

[7] *Id*. at ¶¶ 30-31.

[8] *Id*. at ¶ 31.

[9] *Id*. at ¶ 32.

[10] *Id*. at ¶¶ 35-36.

At some point during this time, Plaintiff applied for a "leave of absence" but was denied.[11] He also submitted a formal request for FMLA leave, but it is unclear whether this formal request was granted or denied.[12] In addition, he sought a transfer to a different unit for "health reasons," but was told that he would need to speak with the nurse manager before a transfer request could be entertained.[13]

Although Plaintiff states that his request for leave was denied, it appears he did take time off from work, as he alleges that he received a correspondence from Defendant in early June 2015, "indicating that if he did not respond by June 8, 2015, he would be terminated."[14] Plaintiff responded to the letter,[15] and was "told to report back to work" on June 10, 2015.[16] On that day, he was informed that he was being terminated for "performance issues in March 2015."[17] He believes that he was replaced by "one or more younger secretaries."[18]

On March 10, 2016, Defendant filed a Charge of Discrimination with the EEOC and with the Pennsylvania Human Relations Commission alleging discrimination based on age, race, sex, and disability, and unlawful retaliation.[19] He received a Dismissal and Notice of Rights letter on March 17, 2016 and timely filed this suit, *pro se*, on June 14, 2016.

---

[11] *Id*. at ¶ 38.

[12] *Id*. at ¶ 39.

[13] *Id*. at ¶¶ 40, 44.

[14] *Id*. at ¶ 41.

[15] *Id*. at ¶ 42.

[16] *Id*. at ¶ 45.

[17] *Id*. at ¶ 46-47.

[18] *Id*. at ¶ 48.

[19] *Id*. at ¶ 16. Mot. (Doc. No. 27) at Exhibit A.

After counsel was appointed, Plaintiff filed the Amended Complaint (Doc. No. 26). Counts I, II, and IV of the Amended Complaint allege discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981 respectively. Count III asserts disability discrimination and retaliation in violation of the Americans with Disability Act ("ADA"). Count V alleges interference and retaliation in violation of the FMLA.

Defendant now moves to dismiss all claims.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[20] In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[21] Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[22] Something more than a mere *possibility* of a claim must be alleged; a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[23] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[24] In deciding a motion to dismiss, courts may consider "only allegations in the complaint, exhibits attached to the complaint,

---

[20] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[21] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[22] *Twombly*, 550 U.S. at 555, 564.

[23] *Id.* at 570.

[24] *Id.* at 562 (internal quotation marks and citation omitted).

matters of public record, and documents that form the basis of a claim."[25] A motion to dismiss may be granted if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."[26]

## III. DISCUSSION

### A. Timeliness

Defendant asserts that Plaintiff's claims pursuant to the ADEA, Title VII, and the ADA are untimely to the extent they rely on alleged adverse employment actions that took place more than 300 days before the EEOC charge was filed on March 10, 2016. Specifically, Defendant asserts that any claims based on unequal wages received by Plaintiff prior to May 2015 or his placement on a PIP between March 2014 and March 2015 are untimely.

A plaintiff bringing a claim under the ADEA, Title VII, or the ADA must file a Charge of Discrimination with the EEOC within 300 days of an alleged unlawful employment practice in order to later challenge those practices in court.[27] Failure to exhaust administrative remedies is generally fatal to a claim. However, because the failure to timely file an EEOC complaint is an affirmative defense, Defendant bears the burden of pleading and proof.[28]

There are three adverse employment actions alleged on the face of the Amended Complaint: 1) a wage disparity between Plaintiff and other employees, 2) Plaintiff's placement

---

[25] *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Brown v. Daniels,* 128 F. App'x. 910, 913 (3d Cir. 2005) (quoting *Lum v. Bank of America,* 361 F.3d 217, 222 n.3 (3d Cir.2004)).

[26] *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978).

[27] *Spence v. Straw*, 54 F.3d 196, 200 (3d Cir. 1995) (Title VII); *Money v. Provident Mut. Life. Ins. Co.*, 189 F. App'x 114, 117 (3d Cir. 2006); *Williams v. East Orange Community Charter School*, 396 F. App'x 895, 897 (3d Cir. 2010) (ADEA); *Churchill v. Star Enterprises*, 183 F.3d 184, 190 (3d Cir. 1999) (ADA).

[28] *See, e.g., Lucas v. City of Philadelphia*, No. 11-4376, 2012 WL 464929, at *3 (E.D. Pa. Feb. 13, 2012) (citing *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997)).

on a PIP, and 3) Plaintiff's termination.[29] While Plaintiff's race, sex, and disability claims rely on all three of these alleged actions, Plaintiff's age discrimination claim under the ADEA relies solely on his termination. Thus, at the outset, because there is no dispute that Plaintiff's termination in June 2015 was within the 300 day time frame, Plaintiff's ADEA claim (Count I) is timely.[30]

The Court also declines to hold at this stage of the proceedings that Plaintiff's unequal pay claims under Title VII and the ADA are untimely. Pursuant to the Lilly Ledbetter Fair Pay Act of 2009, an unlawful employment practice with respect to discrimination in compensation "occurs . . . when an individual is *affected by* application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid," and a plaintiff may recover back pay for up to two years preceding the filing of the charge.[31] Here, Plaintiff alleges that he learned of a pay disparity between him and his co-workers in June 2014 and that he remained employed by the Defendant through June 10, 2015. This is sufficient at this stage to support an inference that between May 15, 2015 (300 days before March 10, 2016) and Plaintiff's termination, he continued to be affected by the same compensation decisions that affected him in June 2014. While Defendant asserts that Plaintiff took leave in March 2015, and may not have received pay in the last months prior to his termination, that is a

---

[29] An adverse employment action under Title VII, the ADA, and the ADEA, is "an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *LeBlanc v. Hill Sch.*, No. 14-1674, 2015 WL 144135, at *9 (E.D. Pa. Jan. 12, 2015) (citation omitted); *Santee v. Lehigh Valley Health Network, Inc.*, No. 13-3774, 2013 WL 6697865, at *7 (E.D. Pa. Dec. 19, 2013).

[30] Am. Compl. ¶ 51.

[31] 42 U.S.C.A. § 2000e-5 (West); *see also, e.g.*, *Schengrund v. Pennsylvania State Univ.*, 705 F. Supp. 2d 425, 432-33 (M.D. Pa. 2009) ("[I]f plaintiffs demonstrate wages were the result of a discriminatory decision to pay them less money than their [similarly-situated] coworkers, they may recover for each and every paycheck received from the present dating back to 300 days prior to the filing of their action with the EEOC . . . , and they may recover back pay for up to two years prior . . . .").

factual question more appropriately resolved at a later stage of the proceedings.[32]

In contrast, to the extent Plaintiff asserts that his placement on the PIP is independently actionable under the ADA or Title VII, that claim is untimely because the PIP lasted only until March 2015. Contrary to Plaintiff's contention, the PIP does not fall within the "continuing violations" doctrine because he was "aware of, and had complained about, the alleged hostile treatment" prior to the statutory period, when he told Defendant's human resources department that his placement on PIP was a form of "harassment."[33] Moreover, Plaintiff has not alleged sufficient facts to establish that Defendant's conduct had the requisite relatedness, frequency, or pervasiveness to constitute a practice or pattern of discrimination rather than "the occurrence of isolated or sporadic acts."[34]

Accordingly, the Court will dismiss Counts II and III as untimely with respect to any claim based on Plaintiff's placement on the PIP as an independent adverse employment action. This, however, does not preclude Plaintiff from relying on his allegations concerning his placement on the PIP for purposes of his § 1981 claim race discrimination claim or to support an inference of discriminatory intent with respect to his Title VII, ADEA, and ADA claims.

---

[32] *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) ("If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).")

[33] *Fusco v. Bucks Cnty of Pa.,* 08-cv-2082, 2009 WL 4911938, at *8 (quoting *Jones v. WDAS FM/AM Radio Stations,* 74 F. Supp. 2d 455, 463 (E.D.Pa.1999) ("allowing the plaintiff 'to avoid the statutory timely filing requirement by invoking the continuing violations doctrine would be inconsistent with the doctrine's equitable premise that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated.'")

[34] *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001).

**B. Failure to State a Claim**

    1. <u>Age, Sex, and Race Discrimination</u>

Where, as here, a plaintiff has not alleged direct evidence of purposeful discrimination and relies on indirect evidence to allege age, sex, or race discrimination in violation of Title VII, the ADEA, or § 1981, the complaint must first allege facts that, if true, would establish the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position he held; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination.[35] To plausibly allege the fourth element, the complaint may either: (1) allege that "similarly situated employees who . . . were not members of the same protected class . . . were treated more favorably under similar circumstances" or (2) allege facts that "otherwise show[ ] a causal nexus between [the employee's] membership in a protected class and the adverse employment action."[36]

Defendant contends that Plaintiff has failed to allege facts that would give rise to an inference of intentional discrimination with respect to his pay, his placement on a PIP, or his termination.

With respect to alleged discrimination in pay, which Plaintiff only asserts in support of his race and sex discrimination claims, he relies on his allegations that other secretaries, who were not African-American, were paid more than he was, and that two female secretaries were paid approximately $1.40 more per hour than he was. At this stage of the proceedings, these allegations that other employees outside of his protected class, who had the same job title in the

---

[35] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[36] *Greene v. Virgin Islands Water & Power Authority*, 557 F. App'x 189, 195 (3d Cir. 2014) (citing *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 n.7 (3d Cir. 2003)).

same hospital, were paid more than Plaintiff are sufficient to support an inference of sex and race discrimination with respect to his compensation.

However, Plaintiff has failed to allege sufficient facts to state a claim of age, sex, or race discrimination based on his placement on a PIP or his termination. Plaintiff asserts that his termination and placement on PIP were pretextual. But he does not allege any facts to support his general claim that he was placed on a PIP or terminated because of his age, sex, or race rather than problems with his performance. Specifically, Plaintiff does not allege facts that would suggest he met Defendant's performance standards or that the PIP was otherwise unwarranted.[37] Nor does he allege that other employees who were outside of his protected status, but performed similarly or engaged in similar conduct, were treated differently. Plaintiff's bare assertion that he was replaced by a younger secretary does not raise his claim above the level of mere speculation.[38] Accordingly, Defendant has not stated a claim for age, sex, or race discrimination with respect to his placement on a PIP or his termination, and Counts I, II, and IV will be dismissed without prejudice.

2. Disability Discrimination and Retaliation

To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that he is (1) disabled within the meaning of the ADA, (2) can perform essential functions of his job with or without reasonable accommodation, and (3) suffered an adverse

---

[37] The Court notes that Plaintiff's original complaint, which attached what appears to be an excerpt from his EEOC intake form, contains additional allegations that may be relevant to his discrimination claims. However, because the Amended Complaint did not include these allegations or attach the same materials, the Court declines to consider the additional facts for purposes of this motion to dismiss.

[38] *Cauler v. Lehigh Valley Hosp., Inc*., 654 F. App'x 69, 72 (3d Cir.), *cert. denied*, 137 S. Ct. 480, 196 L. Ed. 2d 385 (2016) ("we agree that the allegation in the complaint that a "substantially younger" person was hired does not give rise to an inference of discrimination").

9

employment action as a result of discrimination based on his disability.[39] Defendant contends that Plaintiff has not alleged sufficient facts to establish the second or third elements.[40]

With respect to Plaintiff's ability to perform the functions of his job, Plaintiff has not clearly alleged the requirements of his position, the nature of his disability, or that he was otherwise qualified for his position despite his disability. Contrary to Plaintiff's contention,[41] the mere fact that he was employed by Defendant up until the time of his termination does not by itself establish that he remained qualified for his job.[42] Such an assumption would vitiate the qualification element for any discrimination claim based on wrongful termination since any terminated employee was employed up until the time of his or her termination. Instead, Plaintiff must allege specific facts to support his assertion that he could perform the essential functions of his job with or without reasonable accommodations.[43]

---

[39] *Shaner v. Synthes,* 204 F.3d 494, 500 (3d Cir. 2000); *Gaul v. Lucent Technologies Inc.,* 134 F.3d 576 (3d Cir. 1998). In his opposition brief, Plaintiff asserts that his ADA claim can survive on the basis of his family member's disability, but this basis was not pleaded in the Amended Complaint. Am. Compl. ¶¶ 56-60. While a plaintiff can assert an ADA claim based on "association" with a disabled person instead of his own disability, he must allege sufficient facts to show that he suffered an adverse employment action as a result of the association. *See, e.g.*, *Reddinger v. Hosp. Cent. Servs., Inc*., 4 F. Supp. 2d 405, 409 (E.D. Pa. 1998); *Anh Truong v. Dart Container Corp.*, No. 09-3348, 2010 WL 4237944, at *6 (E.D. Pa. Oct. 26, 2010), *adhered to on reconsideration sub nom.*, *Truong v. Dart Container Corp.*, No. 09-3348, 2010 WL 4611980 (E.D. Pa. Nov. 12, 2010).

[40] Defendant has not challenged the sufficiency of Plaintiff's allegations regarding his disability; however, should Plaintiff decide to amend his complaint, he should include additional allegations to support his assertion that he has or is perceived to have "a physical impairment that substantially limits one or more major life activity," as defined under the ADA. *See, e.g., Heard v. St. Luke's Hosp*., No. 08-5494, 2009 WL 3081513, at *3 (E.D. Pa. Sept. 28, 2009) ("Without even a short and plain statement of the impact the impairment has on at least one major life activity, [plaintiff's claim of a disability] is merely a bald assertion or a vague and conclusory allegation"); *see also Amiot v. Kemper Ins. Co.*, 122 F. App'x 577, 580 (3d Cir. 2004) (concluding that the allegations in the complaint failed to establish that the plaintiff "had an impairment which substantially limited a major life activity").

[41] Pl.'s Resp. to Mot. to Dismiss at 9 n.4.

[42] *Glover v. C & Z Constr. Servs., LLC*, No. 1:17-CV-647, 2017 WL 3279164, at *3 (M.D. Pa. Aug. 2, 2017) (dismissing claim in the absence of any allegations that Plaintiff was qualified for his position).

[43] However, a transfer to another unit, as Plaintiff alleges he requested, is not necessarily a "reasonable accommodation." *See, e.g. Gaul v. Lucent Tech., Inc*., 134 F.3d 576, 581 (3d Cir. 1998) ("[B]y asking to be transferred away from individuals who cause him prolonged and inordinate stress, [the plaintiff] is essentially asking this court to establish the conditions of his employment, most notably, with whom he will work. However, nothing in the ADA allows this shift in responsibility.") (internal quotation marks, citations, and alterations omitted).

Moreover, Plaintiff has not alleged sufficient facts to suggest a causal nexus between his disability and his termination. The only facts alleged by Plaintiff to support an inference of discrimination in his termination are 1) that Defendant's human resources department suggested that Plaintiff take a leave of absence because of "personal issues", and 2) that Defendant was aware of his disability by virtue of his interactions with the human resources department and the Employee Assistance program. But mere awareness of a disability does not create an inference of discrimination;[44] nor does the mere suggestion that Plaintiff take leave.[45] Without additional facts, Plaintiff's allegations do not state a plausible claim of disability discrimination.[46]

Similarly, Plaintiff's allegations do not state a claim for disability retaliation. To make out a retaliation claim, the employee must allege: (1) he engaged in protected employee activity; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected activity.[47] Here, Plaintiff asserts that the following actions constituted "protected activity" under the FMLA and the ADA: 1) filing an EEOC charge of discrimination in 2008; 2) complaining to human resources that his placement on a PIP constituted "harassment"; 3) requesting assistance from the Employment Assistance Program; 4) applying for leave under the FMLA.[48]

---

[44] *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996).

[45] To the contrary, employers have an affirmative obligation to discuss potential accommodations with an employee when put on notice that the employee may need accommodations. *See, e.g., Garner v. Sch. Dist. Of Phila.*, 63 F. Supp. 3d 483, 493-94 (E.D. Pa. 2014).

[46] Even in his own briefing, Plaintiff states that he was terminated "[d]espite his medical issues," not because of them. Pl.'s Resp. to Mot. to Dismiss at 9.

[47] *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146-47 (3d Cir. 2004).

[48] Pl.'s Resp. to Mot. to Dismiss at 10.

Plaintiff has not alleged that either his EEOC charge or his complaint to human resources concerned a disability, and accordingly, he has not adequately pleaded that these activities were protected under the ADA.[49]

With respect to his request for assistance from the EAP and his applications for leave, which may arguably constitute protected activities at this stage of the proceedings, Defendant has failed to plead facts that suggest a causal link between these activities and his subsequent termination. In assessing whether a complaint has adequately pleaded causation, courts have typically looked to evidence of temporal proximity between the protected activity or a pattern of antagonism by the employer in response the protected activity.[50] Here, Plaintiff has not alleged any evidence of persistent antagonism against his request for assistance from the EAP or his application for leave, or any other facts to suggest that his termination was motivated by these activities. Nor has he alleged when these activities took place, preventing the Court from determining whether they were close enough in time to his termination to be "unusually suggestive" of an impermissible motive.[51]

Accordingly, Plaintiff's ADA claims will be dismissed without prejudice.

   3. FMLA Violations

The FMLA requires employers to provide unpaid leave to employees because of a serious health condition that makes the employee unable to perform the functions of his position, or to care for a close family member with a serious health condition, and to reinstate the employee to

---

[49] The Amended Complaint does not assert an age, race, or gender retaliation claim under the ADEA or Title VII.

[50] *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001).

[51] *C.f. Donald v. Se. Pa. Trans. Auth.*, No. 13-440, 2013 WL 12156076, at *1 n.1 (E.D. Pa. July 17, 2013).

his former position, or an equivalent one, upon return from leave.[52] To state a claim for interference under the FMLA, an employee must show that "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA."[53]

Here, Defendant contends that Plaintiff was not "denied" FMLA benefits because notwithstanding his allegation that his request for FMLA leave was denied, the Amended Complaint as a whole indicates that he took leave at some point after March 2015 and did not "return to work" until June 10, 2015. However, even if Plaintiff was granted FMLA leave, Defendant's failure to reinstate Plaintiff to the same or an equivalent position once he returned from leave can constitute the basis for an FMLA interference claim when all other elements are satisfied. Here, because Defendant has not challenged any other elements of Plaintiff's claim, Defendant's Motion to Dismiss is denied with respect to Plaintiff's FMLA interference claim.

Similarly, Plaintiff's allegation that he was terminated immediately after returning from leave (which Defendant contends has been pleaded as FMLA leave) is sufficient at this stage to state a claim for FMLA retaliation.[54]

### C. Amendment

In civil rights cases, "district courts must offer amendment— irrespective of whether it was requested— when dismissing a case for failure to state a claim unless doing so would be

---

[52] 29 U.S.C.A. § 2612.

[53] *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (citations omitted).

[54] *See, e.g.*, *Popko v. Penn State Milton S. Hershey Med. Ctr.*, No. 1:13-CV-01845, 2014 WL 3508077, at *8-9 (M.D. Pa. July 14, 2014).

inequitable or futile."[55] In this case, Plaintiff has already amended once as of right and has not requested leave to amend a second time; however, the Court will grant Plaintiff leave to file a second amended complaint in the event that he can overcome the pleading deficiencies identified herein.

An order follows.

---

[55] *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007).